```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------
BARRY MORSTON
                                              14-CV-5079 (RRM) (LB)
              Plaintiff,
-against-
                                              SECOND AMENDED
THE CITY OF NEW YORK and NYPD POLICE          COMPLAINT
OFFICER RAMON E. CABRAL, SHIELD #
23531, individually and in his                Jury Trial Demanded
official capacity,


              Defendants.
----------------------------------------
```

Plaintiff, by his counsel, AARON M. RUBIN, ESQ, hereby alleges as follows, upon knowledge as to himself and his acts, and as to all other matters upon information and belief:

1. Plaintiff brings this action for compensatory and punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 for violations of his civil rights under the United States Constitution.

2. Defendants subjected Plaintiff to an illegal search of his person, an illegal seizure of his person, unlawful arrest, false imprisonment, illegal detention, malicious prosecution, abuse of process, humiliation and intimidation.

3. Jurisdiction in this Court is established pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b) because the incidents giving rise to the claims took place in Kings County.

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

6. Plaintiff is a 35-year old African-American man and a citizen of the United States, and a resident of Queens County in the State of New York.

7. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  The CITY OF NEW YORK is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as the City's agent in the area of law enforcement and for which it is ultimately responsible.  The CITY OF NEW YORK assumes the risks incidental to the maintenance of the NYPD, and the employment of its police officers.  Additionally, the CITY OF NEW YORK was at all times relevant herein the public employer of police officer RAMON E. CABRAL, shield # 23531, ("CABRAL"), who is being sued in both his individual and official capacities.

**STATEMENT OF FACTS**

8.   This action arises from the false arrest and unlawful imprisonment of Mr. Morston by police officer CABRAL who, acting under color of state law, unlawfully detained, searched, arrested and caused the continued incarceration and prosecution of Mr. Morston without justification or probable cause.

9.   Plaintiff was a resident of Queens County at all relevant times referenced herein.

10.  On or about the evening of October 8, 2011, at approximately 11:40 p.m., plaintiff was present in Room 301 of the Sunny 39 Hotel, located at 517 39th Street in Kings County.

11.  Plaintiff was present in the room as a temporary and lawful guest of the registered hotel occupant, Andre Deluca, who was also present inside. Plaintiff, an invited guest of Mr. Deluca, had not stayed in the room overnight, nor intended to stay the night.

12.  At approximately 11:40 p.m., Plaintiff attempted to leave Room 301.

13.  CABRAL did not permit Plaintiff to leave the room, and instead forcefully entered Room 301 by pushing the door open with his gun drawn, and detaining Plaintiff

inside without probable cause that Mr. Morston had or was about to commit any offense or crime.

14. CABRAL's forceful entry into Room 301 was without probable cause, justification, permission, invitation or consent.

15. CABRAL did not possess a warrant to search Room 301 or make an arrest, did not attempt to obtain a warrant or any other judicial permission, and was neither aware of a warrant nor accompanied by any other police officer in possession of a warrant.

16. At no time did CABRAL or any other police officer request or receive consent by the occupants of Room 301 to enter and search.

17. Upon unlawfully entering Room 301, CABRAL shouted "freeze" to Mr. Morston, and ordered him to raise his hands in the air and "shut the fuck up and do as you're told."

18. Mr. Morston complied with CABRAL's orders.

19. Without legal justification or probable cause, CABRAL performed a frisk of Mr. Morston's person.

20. CABRAL did not find or recover any contraband during the frisk, but continued to conduct a more invasive search of Plaintiff's person, and seized Plaintiff's cell-phone, credit cards and New York State

4

I.D. from Plaintiff's pockets, and money from inside Plaintiff's shoes.

21. CABRAL proceeded to handcuff Mr. Morston and removed him from Room 301 into the hallway ordering him to lie on the ground, which he did.

22. In the hallway, CABRAL interrogated Mr. Morston, asking if he "knew about anything illegal going on" in the hotel, to which Mr. Morston explained that he did not know about anything illegal and that he was there to pick up Andre Deluca to go out for food and entertainment.

23. CABRAL performed a search of Room 301 without a search warrant or consent.

24. CABRAL did not recover any firearm or other weapon or contraband from Plaintiff, nor was CABRAL aware of or informed by anyone else of any recovery of a firearm, weapon or other contraband from Mr. Morston.

25. CABRAL did not observe Mr. Morston in possession of any firearm or other weapon or contraband, nor was CABRAL aware or informed that anyone else had observed Mr. Morston in possession of a firearm, weapon or other contraband from Mr. Morston.

26. Nevertheless, CABRAL detained, searched, handcuffed and arrested Mr. Morston on charges of criminal

5

possession of a weapon in the second degree, a class C felony, under Penal Law § 265.03(3), criminal possession of a weapon in the third degree, a class D felony, under Penal Law § 265.02(1), and criminal possession of a weapon in the fourth degree, under Penal Law § 265.01(1). All of these charges were ultimately dismissed.

27. Although CABRAL was accompanied by and working with other police officers, CABRAL was assigned as the arresting officer, for which he was responsible for determining the arrest charges for Mr. Morston and processing and filling out the arrest paperwork and informing prosecutors about the arrest, among other things.

28. CABRAL charged Mr. Morston with jointly possessing a loaded 9-millimeter pistol with Andre Deluca.

29. CABRAL transported Plaintiff to the 72nd police precinct in Brooklyn for arrest processing and further detention and imprisonment.

30. CABRAL proceeded with the arrest of Mr. Morston even though Andre Deluca admitted to CABRAL at the precinct that Room 301 was his and that he was the owner of 9-millimeter pistol.

31. Nevertheless, in an attempt to cause a criminal prosecution to proceed against Mr. Morston and to obfuscate the fact that there was no probable cause to

6

arrest Mr. Morston or search the room without a warrant, CABRAL informed members of the Kings County District Attorney's Office, including assistant district attorneys, that he recovered a 9 millimeter pistol from the floor of Room 301, without further clarifying or advising the District Attorney's Office that the pistol was in fact recovered from a closed shoe box underneath the bed and not in plain view. CABRAL purposefully omitted facts of how and where he recovered the pistol in an attempt to falsely manufacture probable cause, such as suggesting through omission that he had recovered the pistol in plain view.

32. CABRAL deliberately caused Mr. Morston continued imprisonment on the arrest charges, which were later completely dismissed. For instance, although CABRAL arrested Mr. Morston at around 11:44 p.m. on October 8, 2011, he did not complete the arrest processing paperwork until, upon information and belief, approximately 10:20 a.m. the next day, and did not inform a member of the Kings County District Attorney's Office with the information required to write a criminal court complaint until, upon information and belief, approximately 3:15 p.m. on October 9, 2011.

33. This delay caused Mr. Morston to be arraigned the next day on October 10, 2011, at, upon

7

information and belief, approximately 12:29 p.m. in Kings County criminal court, which prolonged Mr. Morston's pre-arraignment imprisonment.

34. At his arraignment, Mr. Morston was charged by criminal court complaint, filed by the Kings County District Attorney's Office and based on CABRAL's misrepresentations to prosecutors, with one count of Criminal Possession of a Weapon in the Second Degree, under Penal Law § 265.03(3), a class C felony, and one count of Criminal Possession of a Weapon in the Fourth Degree, under Penal Law § 265.01(1), a class A misdemeanor.  All of these charges were ultimately dismissed.

35. A bail of $7,500 was set for the Plaintiff by the court at arraignment.  Mr. Morston was unable to post bail, and his imprisonment therefore continued as he was transported for further detention at Riker's Island.

36. As a result of defendants' actions, Mr. Morston suffered a loss of liberty, freedom, emotional distress, fear, humiliation, and a loss of quality of life, in addition to a violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

37. Defendant CITY OF NEW YORK knew of CABRAL's tendencies to make unlawful arrests and seizures, but took

no steps to correct, train, or prevent the exercise of such tendencies. The CITY OF NEW YORK was aware of a pattern and practice of such conduct but did not take sufficient steps or properly train its officers to prevent it.

38. The Kings County District Attorney's Office never presented the felony charges contained in its criminal complaint to the grand jury.

39. Mr. Morston did not in fact possess any contraband, firearm or weapon on or about October 8, 2011.

40. On April 11, 2012, all of the charges against Mr. Morston were dismissed.

**FIRST CLAIM:   FALSE ARREST/IMPRISONMENT**

41. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

42. Defendants, acting under color of state law, arrested, searched and imprisoned plaintiff without legal justification or probable cause.

43. Plaintiff was aware of his confinement, did not consent to his confinement, and the confinement was not otherwise privileged or lawful.

44. Defendants intended to falsely imprison and confine plaintiff and plaintiff was denied his liberty and freedom.

45. This conduct caused physical and emotional pain and suffering.

46. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury.

**SECOND CLAIM: ABUSE OF PROCESS**

47. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

48. Defendants, acting under color of state law, maliciously issued criminal process against plaintiff by, among other things, falsely arresting and charging him, making false statements to members of the Kings County District Attorney's Office, and completing police paperwork with false statements.

49. Defendants willfully issued process in order to cover up their acts of abuse of authority.

50. Defendants arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

51. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury.

**THIRD CLAIM: MALICIOUS PROSECUTION**

52. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

53. Defendants, acting under color of state law, maliciously misrepresented to prosecutors and members of the Kings County District Attorney's Office the basis on which they arrested plaintiff, which played a substantial role in initiating the prosecution of Mr. Morston.

54. Defendants' misrepresentations deprived plaintiff of his liberty.

55. The criminal case and all charges against plaintiff were ultimately dismissed.

56. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be fixed by a jury.

**FOURTH CLAIM:  MUNICIPAL LIABILITY**

57. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

58. The CITY OF NEW YORK directly caused the constitutional violations suffered by plaintiff, and is liable for the damages suffered by plaintiff as a result of the conduct of the defendant police officers.

11

59. The conduct of the police officers was a direct consequence of policies and practices of the CITY OF NEW YORK.

60. At all times relevant to this complaint, the CITY OF NEW YORK, acting through the NYPD, had in effect policies, practices and customs that condoned and fostered the unconstitutional conduct of the individual defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

61. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials with all the actual and apparent authority attendant thereto.

62. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK, all under the supervision of ranking officers of the NYPD.

63. The aforementioned customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK and NYPD, include but are not limited to the following unconstitutional practices: failing to properly train; failing to supervise police officers; subjecting persons to

violations of their constitutionally protected rights; subjecting persons to false arrest; subjecting persons to abuse of process; failing to discipline.

64. The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of the plaintiff.

65. The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

66. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of plaintiff's constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands the following relief jointly and severally against all the defendants:

(1) Compensatory damages in an amount to be determined by a jury at trial;

(2) Punitive damages in an amount to be determined by a jury at trial;

(3) The convening and empanelling of a jury to consider the merits of the claims herein;

(4) Costs, interest and attorney's fees;

(5) Such other and further relief as this court may deem just and proper.

Dated: New York, New York
       June 18, 2015

AARON M. RUBIN
Attorney for Plaintiff

_____/s/_____
BY: Aaron M. Rubin, Esq.

9 East 40th Street, 11th Floor
New York, New York 10016
(212) 725-4600